[Criminal No. 341.   Filed March 17, 1914.]

[139 Pac. 474.]

## P. D. GARDNER, Appellant, v. STATE, Respondent.

1. LIBEL AND SLANDER—INFORMATION—PUBLICATION—SUFFICIENCY.—An information charging that accused did publish a certain libel of and concerning B. by directing and sending through the postoffice a certain envelope containing a certain libelous letter to one K., which said libelous letter was received by said K., sufficiently shows a publication of the libel, and further allegations that thereby defendant caused the libel to be seen by K. and numerous others is merely evidentiary and surplusage, to be disregarded after verdict.

2. LIBEL AND SLANDER—PUBLICATION—EVIDENCE—SUFFICIENCY.—Under Penal Code of 1901, section 224, providing that, to sustain a charge of publication of a libel, the words or things complained of need not have been read or seen by another, evidence that accused knowingly parted with the immediate custody of the libel, and the circumstances under which he so parted with it exposed it to be read or seen by other persons than himself, is sufficient, to show publication.

3. LIBEL AND SLANDER—INNUENDO.—If the plain natural meaning of words is actionable *per se* no innuendo is required.

4. LIBEL AND SLANDER—INDICTMENT—INNUENDO.—Under Penal Code of 1901, section 824, providing that an indictment must contain a statement of the acts constituting the offense in ordinary and concise language, an information charging that libelous language contained in a letter, to the effect that "I would go down to her home after the children had gone to school and before Willie would get up, and sit and visit with her, and hug her to my breast, feel her person, while the little one would be playing about the floor. She would return my caresses and tell me that she loved me, and that no other man save her husband had ever taken such liberties with her as she allowed me to take; and one time she told me that

'she did not blame a man for getting all that was coming to him.' I asked her if she did not think there was something coming to me after all that had passed between us. She replied 'Not yet, but sometime perhaps, and she would let me know when' ''—was sufficient without an innuendo.

5. LIBEL AND SLANDER—INTENT—BREACH OF THE PEACE.—Under Penal Code of 1901, section 221, providing that every person who willfully and with a malicious intent to injure another publishes or procures, to be published any libel is punishable, etc., the criminal intent with which the libel is published must be the intent to injure another, and not the intent to provoke a breach of the peace or a crime.

6. CRIMINAL LAW—INSTRUCTIONS—QUESTIONS OF LAW AND FACT.— Penal Code of 1901, section 953, providing that, on a trial for libel, the jury has the right to determine the law and the fact, does not conflict with Constitution, article 6, section 6, prescribing the jurisdiction of superior courts, or section 12, providing that judges shall not charge juries as to matters of fact nor comment thereon, but shall declare the law.

7. CRIMINAL LAW—EVIDENCE—HARMLESS ERROR.—In a prosecution for libel, it was not error to refuse to require complaining witness to write certain words in the presence of the jury for the purpose of comparing her handwriting and the peculiarities in spelling certain words with words used in letters alleged to have been written by her, but of which she denied authorship, where other letters in her handwriting were already in evidence, and it did not appear that additional specimens of her handwriting were necessary for comparison.

8. LIBEL AND SLANDER—EVIDENCE—ADMISSIBILITY.—In a prosecution for libel, where the letter from which extracts, charged as libelous, were taken and copied into the information, an objection to the reading in evidence of the alleged libel "because it is pleaded as a letter, and is not a letter at all," was untenable.

9. WITNESSES—IMPEACHMENT—EVIDENCE.—In prosecution for libel, a witness was permitted over objection to testify to a conversation between herself and accused, in which he made damaging statements as to a certain lodge, and requested witness to write letters signing other persons' names thereto, and otherwise assist accused to carry out a scheme relating to the relations of prosecutrix with another man to gratify some motive of accused. Witness denied the request. Accused denied on cross-examination, having had any such conversation. *Held,* that the evidence was properly admitted to impeach accused, as it flatly contradicted accused's denial.

10. LIBEL AND SLANDER—EVIDENCE—MALICE.—Such evidence was properly admitted as bearing upon the malicious intent with which the libelous writing was executed and published.

11. LIBEL AND SLANDER—EVIDENCE—SUFFICIENCY.—In a prosecution for libel, evidence *held* to support a conviction.

12. CRIMINAL LAW—CONFLICTING EVIDENCE—REVIEWS.—A judgment founded upon a verdict supported by substantial evidence will not be reversed merely because a conflict occurs in the evidence.

APPEAL from a judgment of the Superior Court of the County of Graham. A. G. McAlister, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

(N. B.—In this statement of facts and in the opinion we have suppressed the full name of the person alleged to have been injured for evident reasons, referring to her by the first and last letters of her names, thus: "J——e B——s.")

Appellant was convicted· of the crime of libel alleged to have been committed on the fifteenth day of August, 1912, by means of a written statement of and concerning one J——e B——s, with the intent to impeach the integrity, virtue, and reputation of the said J——e B——s, and thereby expose her to public hatred, contempt and ridicule. The libel is alleged to have been published by accused by sending the written statement inclosed in an envelope sealed and addressed to J——e B——s, which sealed and addressed statement and a letter to Emma Kirtland instructing Emma Kirtland to deliver the sealed inclosed statement to J——e B——s, were inclosed in another envelope and sealed and addressed to Emma Kirtland, and received by her through the United States mails. The sealed envelope containing the said statement was delivered to J——e B——s by Emma Kirtland at Safford, in Graham county, Arizona, on or about August 15, 1912, and by J——e B——s opened and in part read by both J——e B——s and Emma Kirtland and others. The information charges that the statement is malicious and false. A new trial was refused. From the judgment and order refusing a new trial, this appeal is prosecuted.

Mr. John McGowan, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Respondent.

CUNNINGHAM, J.—The sufficiency of the information to charge, and the sufficiency of the evidence to support, the publication of the alleged libel is made a ground of error. The information charges that the appellant, P. D. Gardner, " . . . on or about the fifteenth day of August, A. D. 1912, . . . willfully, knowingly, feloniously, unlawfully, and with a malicious intent to injure one J——e B——s, . . . did publish a certain libel of and concerning said J——e B——s by directing and sending through the United States postoffice a certain envelope containing a certain libelous letter to one Emma Kirtland at Safford, Arizona, which said libelous letter was received by said Emma Kirtland; that said P. D. Gardner by sending said libelous letter as aforesaid to Emma Kirtland and parting with same did cause said libelous letter to be seen by said Emma Kirtland and numerous persons other than P. D. Gardner.'' The last clause of the charge quoted is unnecessary to the allegation of the fact of publication of the libel, and may be considered mere surplusage.

The allegation of the fact of publication is satisfied by the words ''did publish a certain libel of and concerning said J——e B——s.'' The particular circumstances of the manner of publication are sufficiently set forth by the words ''by directing and sending through the United States postoffice a certain envelope containing a certain libelous letter to one Emma Kirtland at Safford, Arizona, which said libelous letter was received by said Emma Kirtland.'' The remaining part of the sentence is nothing more than a recital of evidential facts and adds nothing to the ultimate fact of publication directly charged. They are mere surplusage and must be treated as such after the verdict.

The evidence bearing upon the question of publication was to the effect that the accused knowingly parted with the immediate custody of the alleged libel, and the circumstances under which he so parted with it exposed it to be read or seen by other persons than himself. Paragraph 224, Penal Code of Arizona of 1901, provides: ''To sustain a charge of publishing a libel, it is not necessary that the words or things complained of should have been read or seen by another. It is enough that the accused knowingly parted with the immediate custody of the libel, under circumstances which exposed it to be read or seen by any other person than himself.'' The

fact that the accused wrote the statement complained of and mailed it as alleged are among the few uncontroverted facts in the case. The alleged libel was not only exposed to be seen by another than himself, but, if we are to believe the evidence, it was intended under certain conditions to be seen by the committee of the lodge and by the church officials as well as by the person concerning whom it was made. The evidence is satisfactory that it was actually seen by others immediately after it reached the hands of J——e B——s. The allegation of publication was sufficient, and the evidence in support of such allegation is conclusive—the circumstances that exposed it to be seen by other persons than accused are uncontroverted, and expressly admitted by him.

Appellant contends that the information fails to properly plead the alleged libelous matters so as to intelligently understand what is intended as constituting the offense charged; that the libelous matters are pleaded as extracts without innuendoes explaining the language used so as to give to such language a libelous meaning, and directly refer to the identical person alleged in the information to have been the object of such language.

If the plain, natural meaning of the words is actionable *per se,* no innuendo is required. 25 Cyc. 578, and note 23.

In the information extracts from the letter were copied. The first extract follows these words of the information: "That said libelous letter contained many malicious defamations expressed in writing, which said defamations did then and there tend to impeach the integrity, virtue and reputation of said J——e B——s and thereby to expose the said J——e B——s to public hatred, contempt, and ridicule, and parts of which malicious defamations said of and concerning said J——e B——s are in words and figures as follows, to wit: That is to say." Then follows one extract using the pronouns "her" and "she" clearly referring to J——e B——s. Clearly no innuendoes were necessary to explain the meaning of the words used when read in connection with the preceding words of the information, as to whom the reference was made and intended to be made. Following the first extract from the letter and preceding the next extract therefrom appear these words: "And also of tenor following, to wit." Such words precede each extract copied into the information.

More formal language may be considered better English, but could not be clearer to express .the plain meaning intended by the pleader to be conveyed thereby. We are not so much concerned with the manner of conveying thought by language as we are concerned with the fact that the thought is correctly conveyed to a common understanding by unmistakable words. *This language used is ordinary and concise and is* used in such manner as to enable a person of common understanding to know what the pleader intends thereby; that is, to charge the crime of libel committed by the accused upon J——e B——s by means of a writing containing the language quoted in the information—all that paragraph 824, Penal Code of Arizona of 1901, requires in that respect.

The alleged libelous language contained in the first extract from the instrument is as follows: "I would go down to her home after the children had gone to school and before Willie would get up, and sit and visit with her, and hug her to my breast, feel her person, while the little one would be playing about the floor. She would return my caresses and tell me that she loved me, and that no other man save her husband had ever taken such liberties with her as she allowed me to take; and one time she told me 'that she did not blame a man for getting all that was coming to him.' I asked her if she did not think there was something coming to me after all that had passed between us. She replied, 'Not yet, but sometime perhaps, and she would let me know when.' " Can it be correctly said that the true meaning of this language is in need of explanation? The plain, natural meaning is to tend to impeach the virtue and reputation of J——e B——s. If any reasonable meaning can be given to this language other than that it tends to impeach this woman's virtue and reputation— other than that she permitted a man not her husband to take liberties with her person that only the husband of a virtuous woman could take, and that she gave her promise to commit the crime of adultery in the future with the accused, then the language must be given such meaning, and then an innuendo so otherwise explaining such language becomes necessary. No such necessity here exists. If false *per se,* such written, published words tend to bring J——e B——s into disrepute, contempt and ridicule, and need no explanation to give them such criminal meaning.

In *State* v. *Avery*, 7 Conn. 266, 18 Am. Dec. 105, the writing in question "is a letter, addressed, by the defendant, to the wife of another man, stating she had 'played peep-a-boo' with him long enough; by which the jury have found that he meant that she acted libidinously toward him, and invited him to an adulterous intercourse and connection with her, and sought opportunities to effect it. It appears by the information, which the jury have found to be true, that the defendant composed and wrote the letter, and sent it to her, with intent to insult and abuse her, and to seduce and debauch her affections from her husband, entice her to commit adultery, and bring her into hatred and contempt. Adultery is a detestable crime, especially in a female; the most disgraceful a woman can commit, and is punished with great severity by our law. . . . To say of a woman, falsely and maliciously, that she has committed this crime, is a gross slander. To say that she is running about the country, seeking opportunities to commit adultery, renders her more contemptible and ridiculous than the crime itself; and to publish such a story, by printing or writing, is a libel." This language may be used with slight variations in reference to this case and the first extract quoted from the letter in the information. The extract if falsely and maliciously written and published is a libel *per se*, and requires no explanatory words to bring it within such category. The several extracts following may be rejected as surplusage. They do not contradict the first extract, but add thereto, reasserting with greater detail the same reprehensible conduct.

Appellant complains that the information is defective in the particular that no allegation is made that the letter was sent to provoke a breach of the peace or crime. This is untenable. If the statements made in the letter were falsely and maliciously made by the accused, and he knowingly parted with the immediate custody of the libel under the circumstances which exposed it to be read or seen by any other person than himself, it must be presumed that the accused published the libel. Such a libel ordinarily provokes a breach of the peace, and common knowledge informs us that such statements, though true, have often provoked homicides in the past. "Every person who willfully and with a malicious intent to injure another, publishes or procures to be pub-

lished, any libel'' is punishable as prescribed by paragraph 221, Penal Code of Arizona of 1901. The criminal intent with which the libel is published must be the ''intent to injure another,'' not the intent to provoke a breach of the peace or crime. However important such allegation may have been under the common law, or under the authorities cited by appellant, such importance exists in this jurisdiction only so far as the intent to injure another is the purpose of the publication. If the accused publishes a libel with the intent that another receives an injury through a breach of the peace provoked thereby, or the other is injured by reason of the commission of a crime provoked thereby, the publication of the libel with such intent is therefore a publication with intent to injure another.

The appellant complains of an instruction given by the court to the jury to the effect that the jury are made by the laws of Arizona the judges of law and the facts on a trial of libel. Paragraph 953 provides: ''On a trial for libel, the jury has the right to determine the law and the fact.'' The court instructed the jury as follows: '' . . . Under the statutes of Arizona the crime of libel is the only crime in which the jury is made the judges of the law as well as of the facts of the case. This is true in the case of criminal libel, and you are to be judges of the law as well as of the facts. The court has given you the law governing the facts as the court understands and views it. He has given you this because it is his duty; but you are advised that the instructions the court has given as the law are simply advisory. You are not compelled to follow them unless they appear to you as the law. You are superior to the judge of this court, because you are the judges of the law in this case as well as of the facts.''

The appellant complains that paragraph 953 of the Penal Code is in conflict with article 6 of the Constitution of Arizona, and thereby repealed. He particularly relies upon sections 6 and 12 of article 6 to sustain this position. Section 6 prescribes the jurisdiction of superior courts and judges of such courts; original jurisdiction in all criminal cases amounting to a felony is vested in such courts. Section 12 provides that ''judges shall not charge juries with respect to matters of fact nor comment thereon, but shall declare the

law.'' The jury is as much a part of the superior court in the trial of criminal cases amounting to a felony as the judge is a part of such court. Because the superior court is given jurisdiction to try such cases does not mean that the judge of the superior court must try them without a jury. Because the jury is required to assist in the trial of such cases triable in such courts is no reason why the jury cannot be made the judges of the law as well as of the facts of a case. The judge must declare the law, and to all intents and purposes he did declare the law in this case. No conflict with the constitutional provision so requiring the judge to declare the law appears, when the jury are also made the judges of the law. The court tries the case, whether the judge or the jury decides upon the law that governs the disposition of the case. In every case tried by a jury, the jury must necessarily apply to the facts found the law as given them by the court. The jury must decide what the law is as given them by the judge. If the jury make a wrong decision as to what law given by the judge applies to the facts found, the verdict based upon the erroneous decision may be set aside by the judge in all cases except such as this. In this class of cases the verdict cannot be set aside by the judge because it is contrary to the law as understood and declared by him. No conflict exists as contended by appellant.

The appellant complains of the orders of the court rejecting evidence offered by him and admitting evidence over his objection. The complaining witness was asked to write certain words in the presence of the jury for the purpose of comparing her handwriting and the peculiarities in spelling certain words with words used in letters alleged to have been written by witness, but of which witness denied the authorship. Other letters in her handwriting were already in evidence, and it does not appear that additional genuine specimens of the witness' handwriting were necessary for comparison.

Appellant has contended that the court admitted evidence over his objection, and designates such evidence so admitted, the letter from which extracts, charged as libelous, were taken and copied into the information. The objection is to the reading in evidence of the alleged libel ''because it is pleaded as a letter, and is not a letter at all.'' We see no force in the

objection. The court properly allowed the reading of the instrument in evidence.

A witness for the state, Mrs. Richards, was permitted, over the objections of accused, to testify to a conversation between herself and accused, at which time accused made damaging statements relative to the Odd Fellows Lodge, and requested Mrs. Richards to write letters signing other persons' names thereto, and otherwise assist accused to carry out a scheme relating to the prosecutrix and her relation to another man, to gratify some motive of accused. The witness refused to comply with his request. The admission of the evidence is assigned as error. The evidence was offered primarily to impeach the defendant. The predicate for that purpose was sufficiently laid by the prosecution upon the cross-examination of the defendant without objection from him. The ground of objection to the testimony of the witness concerning the Odd Fellows Lodge and prosecutrix was that no proper foundation had been laid. The defendant had denied having had such a conversation at witness' home at any time. The evidence flatly contradicted his denial, and further tended to show that accused deliberately formed a design to injure prosecutrix, and bears upon the motive prompting him in writing the libelous communication involved in the case. The request relative to prosecutrix was properly a circumstance bearing upon the malicious intent with which the libelous writing was executed and published. Either reason present was sufficient to entitle the evidence to admission.

Appellant complains of other errors committed. We have examined each of such questions and find no sufficient grounds that justify a reversal of the judgment. To notice each separate ground alleged would only serve to extend this opinion with no profit. We will briefly refer to the general assignment to the effect that the verdict is contrary to the evidence. With the exception already mentioned, the evidence sharply conflicts at every angle of the case. The testimony tending to establish every other fact and circumstance in the case is directly contradicted by the accused or some witness. Every fact or circumstance offered in support of the defense is sharply contradicted by the prosecution. The defense relies upon the truth of the statements made, and, as an excuse for making and publishing the truth, he asserts that he had been

falsely accused by the husband of the woman alleged to have been injured, and he was prompted to make the statement so that the husband would desist from the wrongful persecution of accused, and thereby save the truth concerning the wife from becoming public scandal of the community. Such refined logic is difficult to follow to the advantage of the accused. The jury have found that the accused is guilty of the crime as charged, and the record contains substantial evidence in support of every fact essential to a conviction.

This court will not reverse a judgment founded upon a verdict so supported, merely because a conflict occurs in the evidence.

A careful examination of the entire record reveals no reversible error.

The judgment is affirmed.

FRANKLIN, C. J., and ROSS, J., concur.

Application for rehearing denied.