[Criminal No. 881.   Filed November 27, 1939.].

[96 Pac. (2d) 285.]

RONALD ROSS, Appellant, v. THE STATE OF ARIZONA, Respondent.

Mr. Ira L. Childers and Mr. Ross F. Jones, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Respondent.

ROSS, C. J.—On December 16, 1938 the defendant was informed against by the County Attorney of Maricopa County for criminal libel. He demurred to the information on the grounds (1) that it "does not state facts sufficient to constitute a criminal charge" and (2) that it "contains matter which constitutes a legal justification or excuse". The demurrer was overruled. Thereafter defendant was tried, found guilty and sentenced to the state prison at Florence for not less than eleven months and twenty-nine days and not more than twelve months.

He has appealed and complains that it was error to overrule his demurrer for the reasons (a) that the information failed "to state how or in what manner or to whom the alleged publication was made, and joined three separate offenses in one count, and is duplicitous"; (b) that the information contains matter showing it was privileged. We quote the information, omitting the formal parts:

"The said Ronald Ross on or about the 2nd day of November, 1938, and before the filing of this information at and in the County of Maricopa, State of Arizona, the said Ronald Ross did then and there wilfully, unlawfully, feloniously and maliciously, with the intent to injure R. T. Jones, J. M. Sparks and Elon M. Jones, express a falsehood by writing, printing, signing and publishing a certain false, untrue and defamatory statement and matter in writing of and concerning R. T. Jones, J. M. Sparks and Elon M. Jones in words and figures as follows, to-wit:

(The libelous matter, contained in an affidavit, is too long to repeat here but its contents, in substance, are that R. T. Jones, J. M. Sparks and Elon M. Jones, the wife of R. T. Jones, had promised to secure for him and some thirty persons whom he was to engage to assist him in stealing the primary election (to be held on Sept. 13, 1938) for said R. T. Jones, who was a candidate at such election for the office of governor of the State of Arizona, positions with the Social

Security Board. The statement or affidavit is shown to have been verified by defendant before a notary public on Nov. 2, 1938.)

"That the said writing, printing and matter above set forth is now and was then and there false and untrue and was then and there maliciously written, printed, signed and published by the said Ronald Ross with the intention on the part of him the said Ronald Ross, to, and which did then and there tend to, bring the said R. T. Jones and J. M. Sparks and Elon M. Jones, referred to in said affidavit as 'Jack Sparks and Mrs. Jones,' respectively, into disrepute, contempt and ridicule, and which then and there tended to and did impeach the honesty, integrity and reputation of the said R. T. Jones, J. M. Sparks and Elon M. Jones, referred to in said affidavit as 'Jack Sparks and Mrs. Jones,' respectively, all of which is contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the State of Arizona.''

■ The complaint that the information does not "state how or in what manner or to whom" the publication was made is absolutely without foundation. The information shows that the libel was accomplished by means of a written affidavit signed by defendant before a notary public "at and in the County of Maricopa" on November 2, 1938, and that the writing was "then and there" published by defendant. The defendant does no more than call our attention to this supposed defect. He does not cite any authority or give any reason to sustain his criticism.

■ The information is not duplicitous. It is true the libelous matter is contained in one paper and directed at three persons, but under the law this is but a single libel. 37 C. J. 147, sec. 669; *State* v. *Hoskins,* 60 Minn. 168, 62 N. W. 270, 27 L. R. A. 412; *State* v. *Hosmer,* 72 Or. 57, 142 Pac. 581; *Bearman* v. *People,* 91 Colo. 486, 16 Pac. (2d) 425, 427. In the latter case the court said:

"It is said that the indictment is bad for duplicity in that in one count it charges that Bearman libeled several persons. The objection results from a failure to note the distinction between civil actions and criminal prosecutions for libel. The purpose of the former is to recover damages for injury to the reputation of an individual; whereas the law makes the publication of a libel a crime, not because of injury to the reputation of an individual, but because such publication tends to affect injuriously the peace and good order of society. Where, as in the present instance, the publication is a single act, it constitutes one offense, even though it is a libel on two or more persons, and may be charged in a single count without rendering it bad for duplicity. 1 Bishop, New Criminal Procedure, § 437; 37 C. J., p. 147; *State* v. *Hosmer,* 72 Or. 57, 142 Pac. 581; *Tracy* v. *Commonwealth,* 87 Ky. 578, 9 S. W. 822; *State* v. *Hoskins,* 60 Minn. 168, 62 N. W. 270, 27 L. R. A. 412; *State* v. *Poulson,* 141 Atl. 165, 6 N. J. Misc. 168. And see *Crane* v. *State,* 14 Okl. Cr. 30, 166 Pac. 1110, 19 A. L. R. 1455, concerning informations for libel against a class. . . . "

██ Defendant also contends his demurrer should have been sustained on the ground of qualified privilege. As a part of this assignment he asserts that the affidavit

"was a part of an amended complaint filed in a court of competent jurisdiction, that the affidavit was made and filed in the judicial proceeding by a party thereto, and affiant acted in good faith and had an interest in the subject matter and was duty bound to disclose the facts contained therein, or honestly acted and believed he had a duty, and therefore is a privileged communication."

This statement shows that, if the published affidavit was privileged, it did not appear on the face of the information. That being true, the privileged character, if it had such character, must be made to appear otherwise than by the demurrer, the latter going only to the facts set forth in the information. There

is nothing in the information showing justification or excuse for the publication. If the information showed the publication of the affidavit was in a judicial proceeding, its privileged character could have been raised by demurrer. Privilege is a defense and does not have to be negatived in the information. *Irwin* v. *Newby,* 102 Cal. App. 110, 282 Pac. 810, 283 Pac. 370.

█ The evidence is that defendant is a lawyer and that he prepared the libelous writing himself. He testified he did. It further appears that he took the libelous instrument to a notary public, officing in the Adams Hotel in Phoenix, who swore him to it and affixed her jurat thereto; that he thereafter took it to the office of Harold Elliott, an attorney in Phoenix, and left it with him. This was sufficient publication under the law. Section 4619, Revised Code of 1928; *Gardner* v. *State,* 15 Ariz. 403, 139 Pac. 474.

█ Defendant offered to show that later such libelous writing was attached to a complaint in a contested election case, pending in the superior court of Maricopa county, between James H. Kerby, contestant, and R. T. Jones, contestee, rival candidates in the September primary election for the office of Governor of the state, on the theory that it thereby became privileged. This offer was disallowed and defendant assigns the ruling as error. If such evidence was admissible, it would be on the ground that it was qualifiedly privileged. Section 4621, Id., reads:

*"Communication to interested person, privileged.* A communication made to a person interested in the communication, by one who was also interested, or who stood in such relation to the former as to afford a reasonable ground for supposing his motive innocent, is not presumed to be malicious and is a privileged communication.''

It is said in 17 Ruling Case Law 329, section 75:

"The question whether or not a communication is privileged is primarily a question of law for the court where the facts and circumstances surrounding the publication are not disputed by the parties. . . . "

When the offer was made, there was no evidence whatever showing, or tending to show, that defendant's "motive" in writing and publishing the libelous matter was "innocent". Nor did he later, although a witness in his own behalf, testify or affirm that the story charged as libelous was true.

"A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he *in good faith* proceeds to do. This general idea has been otherwise expressed as follows: A communication made *in good faith* or any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. . . . " (Italics ours.) 17 R. C. L. 341, sec. 88.

There is no evidence that defendant had an interest in the election contest case or that he was prompted by "a moral or social duty" to impart to Elliott, contestant Kerby's attorney, the information that he had been employed by contestee to steal the election for him.

■ The court's action in refusing to admit evidence showing the affidavit was filed in the contest case was correct for another reason: It was incompetent as evidence; it could not have been used as such. If the

affiant possessed knowledge of any fact pertinent to the issues formed by the pleadings in such case, the proper manner of its presentation to the court would be by deposition or in person, and not by affidavit. Nor did the affidavit have any place as a pleading, or part of a pleading. Attaching it to the complaint did not change its character as an extra-judicial *ex parte* statement. Its only legitimate use was as a memorandum of what the witness (defendant here) claimed to know. There was no possible reason for filing it in the contest case, except to give its contents general publicity before the general election on the eighth day of November, 1938.

We recognize that statements in pleadings by one of the parties in a judicial proceeding, even though untrue and irrelevant, are generally treated as privileged (17 Ruling Case Law 335, section 83), but defendant not being a party to the contest case cannot claim such privilege. When he made the affidavit and unleashed it into the hands of others to be read and otherwise used, unless he was able to prove the statements therein were true, he was guilty of criminal libel.

There are other assignments, some of which we have already covered. Those not covered are so utterly without merit we cannot think counsel really expected the court to occupy itself in their consideration.

The penalty imposed was not a heavy one, probably because the trial court felt defendant was a victim of circumstances, largely due to his physical and mental weakness for some time before and at the time he made the affidavit.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.