455 P.2d 991

Jerome E. ROSCOE, Appellant,

v.

Harry SCHOOLITZ, Jr., as Special Administrator of the Estate of James Robert Sudderth; David Solomont, et ux., et al., Appellees.

No. 1 CA–CIV 657.

Court of Appeals of Arizona.

June 24, 1969.

Rehearing Denied July 29, 1969.
Review Granted Oct. 7, 1969.

Giles, Zielinski & Thur, by Gordon B. Giles, Scottsdale, Marlowe, States, Meyer & Vucichevich, by P. Richard Meyer, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Frank A. Parks, Harrison, Strick & Myers, by Mark I. Harrison, Phoenix, for appellees.

CAMERON, Judge.

This is an appeal from an order granting a new trial after a jury verdict in favor of the plaintiff Jerome R. Roscoe.

We are called upon to determine whether the instructions on qualified privilege given by the court were correct.

The facts necessary for a determination of this matter on appeal are as follows. Plaintiff-appellant, Jerome R. Roscoe, a farmer, was married to Allie "Cathy" Roscoe. The plaintiff's previous wife had died and he had been married to Cathy Roscoe for some 5 years when, late in 1963, Cathy Roscoe became suspicious of plaintiff's activities and employed the defendant, Arizona State Guard and Detective Agency to investigate plaintiff's activities. Defendant, David Solomont, worked for the agency under the supervision of James Sudderth.

After several attempts to obtain evidence against plaintiff, a report (Number 15) was finally given by the agency to Cathy Roscoe which indicated that the plaintiff had committed an act of adultery in the back of a pickup truck while it was parked

in a cluster of bushes on plaintiff's farm land near Scottsdale, Arizona. The day after Cathy Roscoe received the report she sued plaintiff for divorce. The divorce action was contested by the plaintiff. The wife testified in the divorce proceedings that the sole reason she filed for the divorce was the report of the defendant. The divorce was granted and plaintiff sued defendants for libel, slander, and alienation of affection.

The matter was tried to a jury and at the settling of the instructions the defendant requested that the jury be instructed as a matter of law that a qualified privilege did exist. This was denied and instructions were given at defendant's request which allowed the jury to determine the question of qualified privilege itself:

> "You are instructed that one of the privileged communications of defamatory matter is known as a qualifiedly privileged communication. This is a published privileged communication where circumstances exist or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to another person in the performance of a duty. Expressed in another manner, it is a communication made in good faith on any subject matter in which the person communicating has an interest or in reference to which he has a duty, and the same is privileged if it is made to a person having a corresponding interest, even though it contains matter which, without this privilege, would be actionable and, although the duty is not a legal one but only a moral or social duty. If you find from a preponderance of the evidence that Allie Catherine Roscoe in fact employed the defendant in this case to follow and surveil her husband, plaintiff herein, and to report what they found, and if you further find that the report here in question was made to Allie Catherine Roscoe, being a person having an interest in the matters, and defendant also having an interest in the matter by virtue of its

employment, and you further find that the defendant by virtue of its employment had a duty to make such a report and that the communication was made in good faith, then you are instructed that the report is qualifiedly privileged."

The jury returned a verdict of $40,000 compensatory damages and $15,000 punitive damages and defendants moved for a new trial.

The appellees maintained on the motion for new trial that the trial judge committed reversible error in failing to rule as a matter of law that Report 15 was qualifiedly privileged. The trial judge agreed and granted a new trial.

 Assuming as we must that the statements contained in the report Number 15 were untrue and defamatory does not mean that the plaintiff may successfully maintain an action against the defendants for the false statements. Our courts have recognized that on the basis of public policy immunity should be granted to certain persons from civil liability for having made defamatory statements regarding others and that the privilege may be either conditional or qualified. The number of instances wherein a communication is absolutely privileged is not extensive:

> "The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of state, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the state, and matters involving military affairs." 33 Am. Jur., Libel and Slander, para. 125, page 123.

As to a qualified privileged communication our Supreme Court has stated:

> " 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes

such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he *in good faith* proceeds to do'. * * *" Ross v. State of Arizona, 54 Ariz. 396, 402, 96 P.2d 285 (1939).

The courts have held that this rule of qualified privilege generally applies to mercantile agencies such as credit bureaus:

"But the usual rule, which we think should prevail in the District of Columbia, is that a mercantile agency's credit report to an interested subscriber is qualifiedly privileged; unless it is made in bad faith or for an improper purpose, the fact that it contains erroneous unfavorable statements about the plaintiff does not make the agency liable." Watwood v. Stone's Mercantile Agency, 90 U.S.App.D.C. 156, 194 F.2d 160, 161 (1952).

Although counsel have cited no cases involving a private investigative agency such as this and we have found none, we believe that the relationship between a private investigation agency and a client is included under the doctrine of qualified privilege and that the agency may escape liability for admittedly defamatory statements as long as those statements are made in the course and scope of their employment and are not made maliciously or in bad faith or in total disregard of the truth. It is the "occasion" or "relationship" between the parties at the time of the publication and not the contents of the publication itself that gives rise to a qualifiedly privileged communication which continues until prop-

er rebuttal. Phoenix Newspapers v. Choisser, 82 Ariz. 271, 312 P.2d 150 (1957).

We must therefore consider whether the trial court was correct on the motion for new trial in ruling that he should have instructed the jury that the communications were qualifiedly privileged as a matter of law. Our Supreme Court has stated that the question of qualified privilege is primarily one of law where the facts are not in dispute. And:

"It follows therefore that the publication was qualifiedly privileged and the lower court should have so held as a matter of law. *It was reversible error for the court to refuse to so instruct the jury.* * * *." Phoenix Newspapers v. Choisser, supra, at page 277, 312 P.2d, at page 154. (Emphasis ours.)

In the instant case the facts being clear and not in dispute it was reversible error for the court to refuse to instruct that the reports to Cathy Roscoe were qualifiedly privileged as a matter of law. The court was therefore correct in granting defendants' motion for new trial.

It is noted that the jury also found punitive damages in addition to the compensatory damages. It may well be that this represents a finding by the jury that there was malice or bad faith on the part of the defendants. Nevertheless, we feel that the jury was entitled to the correct instruction on the question of qualified privilege before it could be asked to find the facts necessary to support a verdict on punitive damages.

Order affirmed.

DONOFRIO, C. J., and STEVENS, J., concur.